UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BENANTI,<br><br>           Plaintiff,<br><br>    v.<br><br>J. DOERER, et al.,<br><br>           Defendants. | Case No.: 1:24-cv-01108-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S AMENDED MOTION FOR INJUNCTIVE RELIEF**<br><br>(Doc. 42) |

Plaintiff Michael Benanti is appearing pro se and *in forma pauperis* in this civil rights action.

**I.    RELEVANT BACKGROUND**

Plaintiff initiated this action by filing a complaint (Doc. 1) and a "Motion for Injunction" (Doc. 3) on September 18, 2024, as well as other motions not relevant here.

On January 13, 2025, District Judge Jennifer L. Thurston issued her Order Adopting Findings and Recommendations, Dismissing the Action Without Prejudice, and Directing the Clerk of the Court to Close this Case. (Doc. 16.)

Plaintiff filed a Notice of Appeal on February 26, 2025. (Doc. 27.)

On April 3, 2025, the Ninth Circuit Court of Appeals issued its Order staying the appeal and directing this Court to rule on Plaintiff's pleading filed February 6, 2025. (Doc. 38.)

On April 10, 2025, Judge Thurston issued her Order Granting Construed Rule 60 Motion;

1  Vacating Judgment and Order Adopting Findings and Recommendations; Remanding to
2  Assigned Magistrate Judge. (Doc. 39.)
3        Thereafter, on May 28, 2025, the Ninth Circuit dismissed Plaintiff's appeal for a lack of
4  jurisdiction, noting "the district court vacated the January 13, 2025 order and judgment
5  challenged in this appeal and reopened the case." (Doc. 41.)
6        On July 15, 2025, Plaintiff filed an "Amended Motion for Injunctive Relief." (Doc. 42.)
7      **II.**    **DISCUSSION**
8        *Plaintiff's Motion*
9        Plaintiff states his request for injunctive relief stems from "the defendants deliberate
10 disregard for prisoner rights, prison policy and human rights, during a lockdown" between August
11 9 and October 9, 2024, at the United States Penitentiary-Atwater (USP-Atwater). (Doc. 42.)
12 Plaintiff contends that during this lockdown, and "any lengthy lockdown there is a violation of
13 the prisoners constitutional rights" and "no oversight monitoring." (*Id*. at 1.) Lockdowns suspend
14 prisoners' access to administrative remedies, medical treatment, over the counter medication,
15 cleaning supplies, and results in the confiscation of property and "rejection of mail without
16 written notice, etc...." (*Id.*) Plaintiff states his "complaint is filed to expose the violation of
17 prisoner rights and to compel the warden at USP Atwater J. Doerer and all the defendants to
18 follow B.O.P. policy, constitutional rule and human decency." (*Id.*)
19       Next, Plaintiff contends that following implementation of the Antiterrorism and Effective
20 Death Penalty Act of 1996 (AEDPA), "it has become increasingly more difficult for prisoners to
21 get a full & fair review of prisoner rights violations." (Doc. 42 at 2.) He maintains the courts'
22 position that "prison officials are best suited to govern themselves, and that intervention by the
23 courts is disfavored … has only served to protect bad behavior by prison officials." (*Id*.) He
24 contends it "is a known fact that prison officials either ignore or endorse the bad behavior of other
25 prison officials." (*Id*.) Plaintiff alleges the grievance system is plagued by undue delay and
26 thwarting tactics and asserts the "process is corrupted and futile." (*Id*.) He asserts the "only
27 oversight" for the process "is this federal district court." (*Id*.) Nevertheless, he maintains the
28 district court's "reluctance to act on behalf of a prisoner is evidenced in this case." (*Id*.) He cites

2

to the earlier dismissal of this action for a failure to exhaust and asserts this Court abused its discretion in doing so. (*Id.*) Plaintiff contends that action demonstrates "a bias against the plaintiff … to support a flawed conclusion." (*Id*. at 2-3.) He contends bias was further evidenced by this Court's refusal to "take judicial notice of the deliberate delay in mail delivery – even when documentation was provided" to the Court. (*Id*. at 3.) Plaintiff notes the "appeals court had to order this Court to reopen the case" and that the Court "has delayed serving the defendants for 10 months." (*Id.*)

Plaintiff states he "asks this Court to reconsider its primary focus on its role of gatekeeper and focus more on its obligation to protect prisoner rights." (Doc. 42 at 4.) Plaintiff maintains prison officials cannot be expected to address "their own bad behavior" and that he "clearly alleges that (1) the defendants acted knowingly and intentionally, (2) that their actions serve no safety & security concern and (3) that there is no penological purpose for their actions." (*Id*.) He requests "that all 22 defendants [be] served." (*Id.*) Further, Plaintiff states he "is not arguing the [warden's] ability to [assess] a situation and his power to institute a prison lockdown, at this time, although an argument for misuse of a lockdown (to throw staff parties for example) can be made." (*Id.*) He seeks the Court's "oversight in ensuring that B.O.P. policy, prisoner rights of constitutional significance are observed & followed." (*Id.*)

Plaintiff seeks the following nine forms of injunctive relief:

> Warden J. Doerer is ordered to create and enforce a policy that ensures that administrative remedies are available twice a week during a lock down. Remedies will be offered no later then [sic] 72 hours into a lockdown.
>
> Warden J. Doerer is ordered to ensure that all out going mail is sent out no later then [sic] 72 hours after its receipt.
>
> Warden J. Doerer is ordered to ensure the delivery of incoming mail to an inmate is no later then [sic] 72 hours after its receipt at the prison. An exception shall only be made for unusual and specific circumstances and only when the inmate is notified of the delay in writing, which shall not exceed 10 days.
>
> Warden J. Doerer is ordered to enforce B.O.P. policy of providing each inmate with a formal written rejection of all mail that is confiscated, rejected or will be returned. This rejection notice must include the name, address of the sender, a description of the item and a clear and consise [sic] reason for its rejection. The inmate shall

3

>   have an opportunity to appeal the denial before the item received is returned or destroyed.
>
>   Warden J. Doerer is ordered to suspend the confiscation of an inmates [sic] legal material by all staff members. The only exception is for unusual and specific documented approval by the warden.
>
>   Warden J. Doerer is ordered to ensure that each inmate is given the opportunity to go to sick call and see a doctor twice a week during a lockdown that extends more than 72 hours. Sick call will be offered no later then [sic] 72 hours into a lockdown.
>
>   Warden J. Doer [sic] is ordered to allow each inmate to access purchase a full selection of over the counter medical items according to prison policy, twice a week, at all times – especially during lockdowns.
>
>   Warden J. Doerer is ordered to provide cleaning and cell sanitation supplies to each inmate twice a week, starting 72 hours into a lock down.
>
>   Warden J. Doerer is ordered to ensure that the plaintiff is seen by doctor for all his ailments.

(Doc. 42 at 5-6.)

### *The Applicable Legal Standards*

"A preliminary injunction is an extraordinary remedy never awarded as of right."[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party must appear to defend"). The court may not attempt to determine the rights of persons not before it. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who

---

[1] "The standard for a [temporary restraining order] is the same as for a preliminary injunction." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (citation omitted).

are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id*.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act (PRLA), which requires the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."

*Analysis*

Initially, the Court notes that Plaintiff's refers to the AEDPA in his motion, asserting the AEDPA has made it "more difficult for prisoners to get a full & fair review of prisoner rights violations." (*See* Doc. 42 at 2.) In *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016), the Ninth Circuit referred to the exhaustion requirements of the PLRA, which governs civil rights actions, and the AEDPA, which governs habeas petitions, as "separate and distinct," noting that the AEDPA requires a state prisoner to "exhaust all remedies available in state court," while the

5

PLRA requires prisoners to "exhaust state administrative remedies by filing a grievance within the state prison system." *Id.*, at 932-33; *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (exhaustion requirement of the PLRA applies to federal prisoners suing under *Bivens*). In short, the AEDPA is not applicable in this civil rights action.

Personal Jurisdiction is Lacking

Here, the Court lacks personal jurisdiction over the named Defendants, including Warden Doerer. Until one or more of the Defendants have been served with process, this Court lacks personal jurisdiction over them and may not grant the injunctive relief that Plaintiff requests. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Hitchman Coal & Coke Co.*, 245 U.S. at 234-35; *Zepeda*, 753 F.2d at 727-28; *see also Hunt v. Matevousian*, 336 F. Supp.3d 1159, 1171 (E.D. Cal. 2018) ("no defendant has been ordered served, and no defendant has yet made an appearance. Thus, the Court lacks personal jurisdiction over any prison officials at U.S. Penitentiary Canaan, and it cannot issue an order requiring them to take any action").

Plaintiff implicitly acknowledges the Court's lack of jurisdiction by asserting the Court "has delayed serving the defendants for 10 months"[2] (Doc. 42 at 3) and by requesting "that all 22 defendants" be served (*id*. at 4). Notably however, no defendant has been served in this action because the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).[3] The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

---

[2] This Court has one of the heaviest caseloads in the nation. *See Harris v. Fisher*, No. 1:22-cv-00716-HBK (PC), 2022 WL 4473384, at *1 (E.D. Cal. Sept. 26, 2022) (considering involuntary dismissal under Fed. R. Civ. P. 41); accord *Atayde v. Napa State Hosp*., No. 1:16-cv-00398-DAD-SAB, 2022 WL 1215234, at *1 (E.D. Cal. Apr. 25, 2022), recons. denied, 2022 WL 2392619 (E.D. Cal. July 1, 2022) ("This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion").

[3] *See also* Doc. 2 (First Informational Order in Prisoner/Civil Detainee Civil Rights Case issued 9/18/24) at 3-4 (III. SCREENING OF COMPLAINTS).

1 1990). As discussed below, although Plaintiff's complaint has been screened, the undersigned
2 found Plaintiff's complaint failed to state a claim upon which relief may be granted and personal
3 jurisdiction over the named Defendants is absent.

No Actual Case or Controversy

5 Here, there is no actual case or controversy because the Court determined, after screening,
6 that Plaintiff's complaint failed to state a claim upon which relief could be granted. *Lyons*, 461
7 U.S. at 101; *see also Larson v. Neubarth*, No. 1:05-cv-00817-LJO-SMS (PC), 2007 WL 3119674,
8 at *4-5 (E.D. Cal. Oct. 23, 2007) (screening the complaint and finding plaintiff failed to state a
9 claim upon which relief can be granted, denying injunctive relief because "there is not yet an
10 actual case or controversy before the court").

The *Winter* Factors

*The Likelihood of Success on the Merits*

13 In deciding whether a preliminary injunction should issue, the likelihood of success on the
14 merits is the most important factor for the court to consider. *Disney Enterprises, Inc. v. VidAngel,*
15 *Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

16 Plaintiff's complaint was recently screened. In its First Screening Order, the Court
17 determined that Plaintiff had failed to state any claim upon which relief could be granted against
18 any named Defendant. (*See* Doc. 44.) Plaintiff was granted leave to file an amended complaint,
19 curing the deficiencies identified in the screening order. (*Id*. at 14.)

20 More particularly, the Court found four of Plaintiff's five claims were not cognizable. (*See*
21 Doc. 44 at 5-11.) And concerning Plaintiff's potentially cognizable Eighth Amendment deliberate
22 indifference to serious medical needs claim, the Court determined that Plaintiff failed to comply
23 with the applicable screening requirements. (*Id*. at 8-10.) Further, the Court found that although
24 Plaintiff sought to allege claims arising under the Federal Tort Claims Act (FTCA), he failed to
25 identify any specific torts against the United States of America and thus failed to state any claim.
26 (*Id*. at 12-13.)

27 At present, Plaintiff cannot establish he is likely to succeed on the merits of his claims, the
28 most important *Winter* factor.

*Irreparable Harm*

Next, to successfully make an irreparable harm showing, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). Plaintiff must do more than plausibly allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to clearly show specific facts that demonstrate a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Here, the Court finds Plaintiff's motion makes no such showing. The approximate three-month lockdown serving as the basis for Plaintiff's claims in the complaint occurred more than a year ago. And while it is entirely possible USP-Atwater will endure future lockdowns, any injury or harm is not immediate and is in fact speculative and hypothetical. *See Lyons*, 461 U.S. at 101-02 (holding that the threat must be "'real and immediate'" as opposed to "'conjectural' or 'hypothetical'"); *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury"); *Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal. 2002) ("the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative").

*Other Winter Factors*

Liberally construing Plaintiff's motion, he essentially argues that the balance of equities and/or public interest factors weigh in his favor because district courts take the position that "prison officials are best suited to govern themselves, and that intervention by the courts is disfavored … has only served to protect bad behavior by prison officials." (Doc. 42 at 2.) The United States Supreme Court has held that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of recourses, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded

1  considerable deference to the determinations of prison administrators"); *Bell v. Wolfish*, 441 U.S.
2  520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility
3  are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-
4  ranging deference in the adoption and execution of policies and practices that in their judgment
5  are needed to preserve internal order and discipline and to maintain institutional security"). And
6  other courts in this Circuit have determined that the public interest weighs against interfering in a
7  prison's administration.[4] *See, e.g.*, *Crump v. O'Campo*, No. 2:20-cv-2343 KJN P, 2021 WL
8  960964, at *2 (E.D. Cal. Mar. 15, 2021) ("the public interest weighs in favor of not interfering
9  with prison administration, particularly with regard to mental health treatment and housing
10 decisions"); *Haynes v. Diaz*, No. 1:19-cv-00813-EPG (PC), 2020 WL 2857947, at *4 (E.D. Cal.
11 Mar. 4, 2020) (recommending injunctive relief be denied and stating plaintiff failed "to show the
12 balance of equities supports injunctive relief. Prison administration is a difficult and onerous task
13 and courts have traditionally accorded a large degree of deference in cases involving the
14 administration of state penal institutions"), recommendation adopted, 2020 WL 2850166 (E.D.
15 Cal. June 2, 2020); *Sousa v. Wegman*, No. 1:11-CV-01754-MJS (PC), 2012 WL 2521115, at *7
16 (E.D. Cal. June 28, 2012) (finding plaintiff was not entitled to injunctive relief, citing the
17 Supreme Court's caution "against judicial interference with the daily administration of prisons").
18      In conclusion, Plaintiff has not met the required four *Winter* factors necessary for
19 injunctive relief. *Glossip*, 576 U.S. at 876; *see also Kile v. Doerer*, No. 1:24-cv-01177-KES-SAB,
20 2025 WL 2144116, at *1-2 (E.D. Cal. July 29, 2025) (recommending denial of motion for
21 injunctive relief for a lack of personal jurisdiction and a failure to meet the *Winter* factors).
22                        <u>The Requests Are Not Narrowly Drawn</u>
23      Finally, Plaintiff's motion seeks injunctive relief concerning broad categories of
24 administrative decision making by Warden Doerer concerning all federal prisoners housed at
25 USP-Atwater, with one exception – ordering the warden to "ensure that the plaintiff is seen by
26 doctor for all his ailments." (Doc. 42 at 6.)

---

[4] "Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions" in 18 U.S.C. § 4042. *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011).

Plaintiff asks the Court to restrain federal correctional officials from taking certain actions or directing them to perform certain actions on behalf of all other inmates housed at USP-Atwater. (*See* Doc. 42 at 5-6.) Such a request is not narrowly drawn or least intrusive. 18 U.S.C. § 3626(a)(2); *see, e.g., Goodbar v. Paldara*, No. 1:21-cv-01811-ADA-GSA-PC, 2022 WL 17261988, at *2 (E.D. Cal. Nov. 29, 2022) ("Here, an injunction affecting *all* prisoners in the custody of the CDCR is not narrowly drawn"), recommendation adopted, 2023 WL 2024852 (E.D. Cal. Feb. 15, 2023); *Ripple v. California Department of Corrections and Rehabilitation*, No. 1:22-cv-01102-HBK (PC), 2022 WL 16573690, at *3 (E.D. Cal. Nov. 1, 2022) (finding plaintiff's request for the Court to "restrain correctional officials from seizing J-Pay tablets from *all inmates*" to run afoul of the PLRA), recommendation adopted, 2023 WL 2088352 (E.D. Cal. Feb. 17, 2023). Hence, this Court finds the relief Plaintiff seeks is not narrowly drawn, making injunctive relief improper. 18 U.S.C. § 3626(a)(1)(A).

### *Summary of Findings*

In sum, the Court lacks personal jurisdiction over Warden Doerer and the other named Defendants in this action, there is no actual case or controversy at present, the required *Winter* factors have not been met, and the relief Plaintiff seeks in not narrowly drawn. Therefore, the Court will recommend Plaintiff's amended motion for injunctive relief be denied.

### III.     CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons stated above, this Court **HEREBY RECOMMENDS** that Plaintiff's Amended Motion for Injunctive Relief (Doc. 42) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 25, 2025**

UNITED STATES MAGISTRATE JUDGE