UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BENANTI,<br><br>             Plaintiff,<br><br>     v.<br><br>J. DOERER, et al.,<br><br>             Defendants. | Case No.: 1:24-cv-01108-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>(Doc. 10)<br><br>**21-DAY OBJECTION DEADLINE** |

Plaintiff Michael Benanti is appearing pro se and *in forma pauperis* in this civil rights action.

**I.   INTRODUCTION**

On August 22, 2025, the Court issued its First Screening Order. (Doc. 44.) The undersigned found Plaintiff failed to state a claim upon which relief could be granted. (*Id*. at 5-13.) Plaintiff was granted leave to file an amended complaint and provided relevant legal standards. (*Id*.) Specifically, he was directed to file either a first amended complaint, curing the deficiencies identified in the order, or a notice of voluntary dismissal, within 30 days. (*Id.* at 13-14.)

On October 17, 2025, after Plaintiff failed to file an amended complaint or a notice of voluntary dismissal within the prescribed period, the undersigned issued Findings and Recommendations to dismiss this case for Plaintiff's failure to obey court orders and failure to

1  prosecute. (Doc. 47.) Any objections were to be filed within 14 days. (*Id*. at 4-5.)

2  On October 20, 2025,[1] Plaintiff filed a Response to First Screening Order. (Doc. 48.)

3  On October 23, 2025, the Court issued its Order Vacating Findings and Recommendations to Dismiss This Action for Plaintiff's Failure to Obey Court Orders and Failure to Prosecute Issued October 17, 2025. (Doc. 49.) The Court noted it would address Plaintiff's October 20, 2025, response in a separate order. (*Id*. at 2.)

## II.     DISCUSSION

### *Plaintiff's Response to the First Screening Order*

Plaintiff contends he "has been litigating this Complaint for over a year with the district court, who is not a defendant in the Complaint," asserting the issues raised in the screening order "should properly be raised by the defendant." (Doc. 48 at 1.) Plaintiff contends the Court "made every effort to obstruct the filing of the Complaint" and is "misguided by rulings that announce *Bivens* claims should be disfavored." (*Id*.) Plaintiff asserts the Court "should take notice that the petitioner's only mention of monetary damages was it was to be determined by the Court" and that he "made no request for monetary damages and withdraws any such request construed by this Court." (*Id*.)

Plaintiff contends the Court "has demonstrated that its role as gatekeeper far exceeds its obligation to protect prisoners from human rights violations," complaining the Court "has set out a quagmire of seemingly conflicting principles" in its screening order. (Doc. 48 at 1.)

Further, Plaintiff states he "declines to amend the complaint filed Nov 19 2024" because it "clearly states that prison officials abused their power by violating BOP policy, the Constitution & prisoners human rights." (Doc. 48 at 2.) Plaintiff contends the "violations are serious & obvious needing no further explanation." (*Id*.)

---

[1] Although signed, Plaintiff's filing is not dated. Nor is it accompanied by a proof of service. *See* Local Rule 135(c) ("When service of any pleading, notice, motion, or other document is required under Rule 135(b), proof of such service shall be endorsed upon or affixed to the original of the document when it is lodged or filed. Except for ex parte matters, *a paper document shall not be submitted for filing unless it is accompanied by a proof of service*. Proof of service shall be under penalty of perjury and shall include the date, manner and place of service" [emphasis added]). Notably, Plaintiff was provided with a Proof of Service form as a part of the Court's First Informational Order in Prisoner/Civil Detainee Civil Rights Case issued September 18, 2024. (*See* Doc. 2 at 6.) That same order advised Plaintiff that he "must attach a Proof of Service" for "all documents filed with the Court." (*Id*. at 4.)

2

Plaintiff generally contends the claims asserted in his complaint were properly pled, the "Court's concern with a specific claim of deliberate indifference of an ongoing medical condition is irrelevant," and that the Court "seems to expect" him to accept that certain of his claims are without remedy despite his assertions to the contrary. (Doc. 48 at 2.) Plaintiff specifically contends the Court has "failed in its duty to protect prisoners" and that he "has only an antiquated, cumbersome, bias & legally ineffective administrative remedy process to utilize" absent this Court's intervention. (*Id*. at 3.)

Plaintiff further contends the Court "has demonstrated a gross disregard for prisoners rights in this case," stating he is "ashamed" to advise other inmates that "this Court is not inclined to help them," and asserting it "would have been nothing for you to make an inquiry to the warden, find counsel to investigate or appoint counsel in this matter," and stating the Court "should consider doing better in the future." (Doc. 48 at 3.)

### *Plaintiff Has Elected to Stand on His Complaint*

Considering the foregoing, the Court finds Plaintiff elects to stand on his complaint filed November 19, 2024. (*See* Doc. 48 at 2 ["The petitioner declines to amend the complaint …"].) As a result, the undersigned incorporates the previous discussion and analysis of Plaintiff's claims at screening.[2] The undersigned also finds that granting leave to amend would be futile as to certain claims that cannot be remedied but that leave to amend should be granted as to two of Plaintiff's deficiently pleaded claims that could be cured: a claim for deliberate indifference to serious medical needs under the Eighth Amendment and a claim under the Federal Tort Claims Act. Below, the undersigned addresses certain issues raised by Plaintiff's response filed October 20, 2025.

### A. Plaintiff's Complaint[3]

The events giving rise to Plaintiff's claim occurred at the United States Penitentiary, Atwater (USP Atwater) between August and October 2024. Plaintiff names Warden J. Doerer, the

---

[2] The screening and pleading requirements were provided in the screening order. (*See* Doc. 44 at 2-4.)

[3] Plaintiff's original complaint was unsigned. (*See* Doc. 1.) On October 3, 2024, Plaintiff was ordered to submit a signed complaint. (Doc. 7.) Thus, the complaint filed November 19, 2024, is the operative complaint. (*See* Doc. 10.)

3

United States of America, Associate Wardens Queen and Silver, Captain Brasfield, "HSA" Franks, "AHSA" Milarski, Mailroom Supervisor D. Datray, Unit Manager J. Castenada, Case Manager V. Vega, Counselor S. Stockton, "Trust Fund" Beardsly, and "Medical" employees Krodic, Plesenta, Cota, Singh, "Indian Woman," Pena, "Asian Woman,"[4] Putnam, Ibarra, and Debusk, as defendants in this action. (Doc. 10 at 1-3.) He seeks compensatory and punitive damages,[5] "injunctive relief set out in separate motion,"[6] and "[admission], declaration & [commitment] of (1) wrongdoing (2) how it will be resolved (3) [commitment] to resolve the issues." (*Id*. at 12.)

### B. Plaintiff's Claims

Plaintiff references the First, Fourth, Fifth, and Eighth Amendments in asserting his five claims for relief. (*See* Doc. 10 at 4-6, 8, 10.)

#### *Bivens*

A *Bivens*[7] action is the federal analog to suits brought against state officials under 42 U.S.C. section 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. *Baiser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights." *Serra v. Lappin*, 600

---

[4] Unnamed individuals cannot be served. Following the completion of screening, and assuming the Court finds Plaintiff has stated a plausible claim against an unnamed individual or Doe defendant, Plaintiff will be afforded the opportunity to identify the unnamed individuals through limited discovery. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 E.2d 637, 642 (9th Cir. 1980)).

[5] As noted above, in his Response to the First Screening Order, Plaintiff takes issue with this reference to monetary damages, stating his "only mention of monetary damages was it was to be determined by the Court." (*See* Doc. 48 at 1.) While Plaintiff did request "actual or compensatory" and "punative [sic]" "damages to be determined by the Court by law" (*see* Doc. 10 at 12), the undersigned finds the language to be a distinction without a difference. Stated another way, by seeking monetary damages – whether by a sum certain or as determined by a court later – Plaintiff is seeking monetary relief. Nevertheless, Plaintiff went on to state he "withdraws any such request construed by this Court." (Doc. 48 at 1.) Thus, where relevant, the undersigned will reassess the claims in the absence of relief in the form of money damages.

[6] Plaintiff's "Amended Motion for Injunctive Relief" (Doc. 42), filed July 15, 2025, was denied on September 22, 2025. (*See* Docs. 45 & 46.)

[7] *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388 (1971).

4

1  F.3d 1191, 1200 (9th Cir. 2010) (citing *Schearz v. United States*, 234 F.3d 428, 432 (9th Cir.
2  2000). A *Bivens* claim is only available against officers in their individual capacities. *Morgan v.*
3  *United States*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th
4  Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order
5  to state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

6       In *Bivens*, the Supreme Court created an implied cause of action under the Fourth
7  Amendment, "against federal agents who allegedly manacled the plaintiff and threatened his
8  family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022)
9  (quoting *Bivens*, 403 U.S. at 397). Subsequently, the Supreme Court extended the *Bivens* remedy
10 twice: in *Davis v. Passman*, 442 U.S. 228 (1979) (holding that a *Bivens* remedy exists for a Fifth
11 Amendment gender discrimination claim where a congressman fired an administrative assistant),
12 and in *Carlson v. Green*, 446 U.S. 14 (1980) (holding that a prisoner's estate had a *Bivens* remedy
13 under the Eighth Amendment against prison officials for failing to treat the prisoner's asthma
14 which resulted in his death). "These three cases—*Bivens, Davis, and Carlson*—represent the only
15 instances in which the Court has approved of an implied damages remedy under the Constitution
16 itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

17      Not all constitutional cases against federal officers for damages may proceed as *Bivens*
18 claims. There is a two-part test to determine whether a *Bivens* action may proceed. *Ziglar*, 582
19 U.S. at 138-139. To determine whether a *Bivens* claim is cognizable, a court first "ask[s] whether
20 the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases
21 in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (quoting *Ziglar v.*
22 *Abbasi*, 582 U.S. at 139). That is, the Court must determine whether the claim presents a new
23 context from the three cases the Supreme Court has allowed to proceed under *Bivens*. If the
24 answer is no, the claim may proceed. If the answer is yes, the court must apply a "special factors"
25 analysis to determine whether "special factors counsel hesitation" in expanding *Bivens* to the
26 action. *Ziglar*, 582 U.S. at 136.

27      In *Egbert*, the Supreme Court explained that the essential determination is "whether there
28 is any reason to think that Congress might be better equipped to create a damages remedy."

5

*Egbert*, 596 U.S. at 492. If any rational reason exists to defer to Congress to establish a remedy, courts "may not recognize a *Bivens* remedy." *Id*. Further, the existence of alternative remedial structures within the BOP can be a "special factor" to hesitate in finding an available *Bivens* remedy.

<p align="center">First Amendment: Access Claims</p>

Plaintiff alleges the unavailability of a grievance process during lockdown deprived him of access to the courts. (Doc. 10 at 4.) Plaintiff further asserts defendants "cut [him] off from the world," denying him access to "news-current events," his family and attorney (*id*. at 5) and "restricted all communication with the outside world" (*id*. at 11).

However, the Supreme Court has never recognized a *Bivens* remedy under the First Amendment and the Ninth Circuit has also refused to extend a *Bivens* remedy to a claim under the First Amendment. *Egbert*, 596 U.S. at 498 (*citing Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)); *Bush v. Lucas*, 462 U.S. 367, 368 (1983)); *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) (finding denial of access to courts claim was a "new *Bivens* context" and declining to extend private right of action); *Van Gessel v. Moore*, No. 1:18-cv-01478-DAD-GSA-PC, 2020 WL 9051216, at *12-*13 (E.D. Cal. Feb. 25, 2020) (declining to find implied cause of action against defendants for denial of access to courts); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018) (declining to infer *Bivens* remedy for First Amendment retaliation and denial of access to courts claims); *see also Harper v. Segal*, No. 23-cv-3468 (PJS/LIB), 2025 WL 696779, at *10 (D. Minn. Feb. 3, 2025) ("Plaintiff appears here to allege that the Waseca Defendants violated her First Amendment rights to communicate with the world outside the prison. … Plaintiff's First Amendment access-claim here against the individual FCI Waseca Defendants suffers from a critical problem. *Bivens* does not extend to permit the assertion of Plaintiff's First Amendment access-claim"), recommendation adopted, 2025 WL 682153 (D. Minn. Mar. 4, 2025).

For the reasons set for the in the Court's screening order (*see* Doc. 44 at 6-8), the undersigned finds Plaintiff cannot state a First Amendment access claim and granting Plaintiff leave to amend on this basis would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir.

2013); *Lopez v. Smith*, 203 F.3d 1122, 1129-31 (9th Cir. 2000). Moreover, as noted above, Plaintiff has elected to stand on his complaint. As pled, Plaintiff fails to state a claim upon which relief can be granted. Further, Plaintiff withdrew his claim for money damages,[8] leaving only his request for equitable relief. In *Solida v. McKelvey*, the Ninth Circuit held plaintiffs cannot seek injunctive and declaratory relief under *Bivens* if "the equitable relief sought requires official government action." 820 F.3d 1090, 1093 (2016). "*Bivens* is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government. By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Id*. at 1094.[9] Here, to the extent Plaintiff seeks equitable relief (*see* Doc. 10 at 12 ["[admission], declaration & [commitment] of (1) wrongdoing (2) how it will be resolved (3) [commitment] to resolve the issues"]), all require official government action. Therefore, Plaintiff's requests for equitable relief cannot go forward under a *Bivens* claim.

### Fourth Amendment: Property Seizure

Plaintiff cites to the Fourth Amendment as concerns the seizure of his personal property. (Doc. 10 at 8.)

Nevertheless, Plaintiff does not have a right to be free from the search and seizure of his personal property. *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). "[T]he fourth amendment does not protect an inmate from the seizure and destruction of his property." *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). "This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments." *Id*.

Thus, as before (*see* Doc. 44 at 8), the undersigned finds Plaintiff cannot state a Fourth Amendment claim concerning the seizure of his property and granting Plaintiff leave to amend on this basis would be futile. *Hartmann*, 707 F.3d at 1130. Further, Plaintiff has elected to stand on his complaint. As pled, Plaintiff fails to state a claim upon which relief can be granted. Additionally, Plaintiff withdrew his claim for money damages and his request for equitable relief

---

[8] *See* Doc. 48 at 1 and n.5, *ante*.

[9] *See also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("core purpose" of *Bivens* is to "deter[] individual officers from engaging in constitutional wrongdoing"—it is not a proper vehicle for altering an entity's policy).

7

cannot proceed under a *Bivens* claim. *Solida*, 820 F.3d at 1093-94.

<div style="text-align:center">Fifth Amendment: Due Process</div>

Plaintiff alleges that his personal property was confiscated because of the prison's "green bag-massive shake down." (Doc. 10 at 8). However, the Ninth Circuit has previously found that the deprivation of property involves a new *Bivens* context and is not an actionable claim. *See Vega v. United States*, 881 F.3d 1146, 1153-54 (9th Cir. 2018); *see also Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023); *see also Van Gessel*, 2020 WL 905216, at *14 ("Indeed, the Supreme Court has consistently declined to expand an implied right of action to procedural and substantive due process claims").

Therefore, as before (*see* Doc. 44 at 8), the undersigned Plaintiff cannot state a Fifth Amendment due process violation and granting Plaintiff leave to amend on this basis would be futile. *Hartmann*, 707 F.3d at 1130. Additionally, Plaintiff has elected to stand on his complaint. As pled, Plaintiff fails to state a claim upon which relief can be granted. Further, Plaintiff withdrew his claim for money damages and his request for equitable relief cannot proceed under a *Bivens* claim. *Solida*, 820 F.3d at 1093-94.

<div style="text-align:center">Eighth Amendment: Medical</div>

Further, the Ninth Circuit has recently determined that a denial of medical treatment can proceed under *Bivens*, in specific circumstances, if the individual prison staff acted with deliberate indifference to a serious medical need. *Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024). The test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id*. (internal citations & quotations omitted.) Second, the plaintiff must show that the defendant's response to the need was deliberately indifferent. *Id*. The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians

1  provide medical care." *Id.* (internal citations omitted). However, an inadvertent or negligent
2  failure to provide adequate medical care alone does not state a claim under section 1983. *Id.* "A
3  difference of opinion between a physician and the prisoner – or between medical professionals –
4  concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v.*
5  *McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.
6  1989), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir.
7  2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing *Jackson v. McIntosh*,
8  90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff "must show that the course of treatment the
9  doctors chose was medically unacceptable under the circumstances and that the defendants chose
10 this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988
11 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).) In addition, "[m]edical
12 malpractice does not become a constitutional violation merely because the victim is a prisoner."
13 *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Snow*, 681 F.3d at 987-88, overruled in part on other
14 grounds, *Peralta*, 744 F.3d at 1082-83; *Wilhelm*, 680 F.3d at 1122.

15 Plaintiff alleges that during the relevant period "there was no doctor employed by the
16 B.O.P., onsite at USP-Atwater." (Doc. 10 at 6.) As a result, sick call procedures were suspended,
17 and Plaintiff contends he "had no access to medical treatment or to have medication prescribed."
18 (*Id.*) He asserts that while medical staff delivered previously prescribed medications, staff could
19 not prescribe new medications. (*Id.*) Nor was Plaintiff permitted "the biweekly opportunity to
20 purchase a full selection of [over the counter] medications" during that period. (*Id.*) Further,
21 Plaintiff contends he had an allergic reaction to prescription Oxcarbazepine[10] that caused
22 "blotches" on his face that have never resolved. (*Id.* at 7.) Plaintiff maintains he suffered "nerve
23 damage tennis elbow, carpal tunnel and the numbness & pain is ever present and sometimes
24 intense." (*Id.*) Next, Plaintiff alleges a three-week lapse in renewing his prescription medications
25 to treat high blood pressure, thyroid disease and a stomach condition, causing "unnecessary pain

---

[10] Oxcarbazepine prevents and controls seizures in people with epilepsy. *See* https://my.clevelandclinic.org/health/drugs/18433-oxcarbazepine-tablets, last accessed 10/23/2025.

& discomfort." (*Id*.) Plaintiff asserts all named defendants were deliberately indifferent to his serious medical needs. (*Id*. at 6.)

Liberally construing the complaint and even assuming Plaintiff meets the objective prong of the deliberate indifference test, he fails to meet the subjective prong. Plaintiff has not demonstrated that any defendant purposefully acted or failed to respond to his pain or possible medical need or that any defendant caused Plaintiff harm by his or her indifference. *Jett*, 439 F.3d at 1096. Instead, Plaintiff merely recites every defendant's name and asserts he or she, and "the U.S.A.," was deliberately indifferent. (*See* Doc. 10 at 6.) Plaintiff is advised that simply grouping some or all defendants to more general assertions of overall conduct is insufficient. *Rizzo*, 423 U.S. at 373-75. Plaintiff is required to briefly identify the conduct alleged as to *each defendant for each claim. Iqbal*, 556 U.S. at 676-77. Stated another way, any amended complaint must comply with Rule 8 by clearly and succinctly stating what happened, when it happened, and how each defendant was involved.

In the First Screening Order, Plaintiff was granted leave to amend his complaint to assert his Eighth Amendment deliberate indifference to serious medical needs claims. (*See* Doc. 44 at 10, 13.) Plaintiff was provided the relevant legal standards given above and was directed to cure the deficiencies relating to the claims: to briefly identify the conduct alleged as to each named defendant as it relates to the subjective prong of the relevant two-part test. (*Id*. at 10.) Subsequently however, Plaintiff has elected to stand on his complaint. As a result, in the absence of amendment curing the identified deficiencies, Plaintiff's complaint fails to state a claim upon which relief can be granted and is subject to dismissal. 28 U.S.C. § 1915A(b); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, Plaintiff withdrew his claim for money damages and his request for equitable relief cannot proceed under a *Bivens* claim. *Solida*, 820 F.3d at 1093-94.

<div style="text-align:center">Eighth Amendment: Conditions of Confinement</div>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer*, 511 U.S. 825; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a

duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Johnson*, 217 F.3d at 733. A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff contends that during the lockdown period he was denied "cleaning & [sanitation] supplies … to clean his cell, toilet, sink, etc." (Doc. 10 at 10.) However, the Ninth Circuit has also declined to extend *Bivens* to claims relating to unsanitary cell conditions. *See Schwarz*, 761 F. App'x at 733-34. As a result, Plaintiff cannot state a claim on this basis and granting Plaintiff leave to amend would be futile. *Hartmann*, 707 F.3d at 1130. Moreover, Plaintiff has since elected to stand on his complaint. As pled, Plaintiff fails to state a claim upon which relief can be granted. And Plaintiff withdrew his claim for money damages and his request for equitable relief cannot proceed under a *Bivens* claim. *Solida*, 820 F.3d at 1093-94.

<u>Defendant United States of America</u>

Plaintiff appears to assert constitutional claims against the United States. (*See* Doc. 10 at 4, 6, 8, 10.)

Plaintiff may not sustain a *Bivens* action against the United States. Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

The United States has not waived its sovereign immunity for actions brought pursuant to

11

1  *Bivens*. *See Kaiser v. Blue Cross*, 347 F.3d 1107, 1117 (9th Cir. 2003) (noting that there has been
2  no waiver of sovereign immunity under *Bivens*); *Holloman v. Watt*, 708 F.2d 1399, 1401-02 (9th
3  Cir. 1983) (per curiam) (holding that a *Bivens* claim may be maintained only against federal
4  employees in their individual rather than official capacities). Therefore, a *Bivens* action will not
5  lie against the United States, agencies of the United States, or federal agents in their official
6  capacity. *See F.D.I.C.*, 510 U.S. at 486; *Vaccaro*, 81 F.3d at 857; *Cato*, 70 F.3d at 1110.

7  In sum, to the extent Plaintiff's complaint asserts *Bivens* claims against the United States
8  of America, it is subject to dismissal, particularly where Plaintiff has elected to stand on his
9  complaint.

### *Federal Tort Claims Act (FTCA)*

11  The Federal Tort Claims Act or FTCA represents Congress' waiver of sovereign
12  immunity "for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of*
13  *Prisons*, 552 U.S. 214, 217-18 (2008) (citing 28 U.S.C. § 1346(b)(1)). The FTCA, however, has
14  only waived the United States' sovereign immunity for "certain categories of claims." *Id*. at 218.
15  In general, the United States only waives sovereign immunity if an FTCA claim is: (1) against the
16  United States; (2) for money damages; (3) for injury or loss of property, personal injury, or death;
17  (4) that was "caused by the negligent or wrongful act or omission of any employee of the
18  Government;" (5) while such employee is acting within the scope of their employment; and (6)
19  "under circumstances where the United States, if a private person, would be liable to the claimant
20  in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §
21  1346(b)(1).

22  To state a claim and invoke the Court's subject-matter jurisdiction under the FTCA,
23  Plaintiffs must plausibly allege all six elements of Section 1346(b). In addition, section 2675(a)
24  requires a plaintiff to show he "first presented the claim to the appropriate Federal agency and his
25  claim [was] finally denied by the agency in writing and sent by certified or registered mail." 28
26  U.S.C. § 2675(a).

27  The FTCA allows suit against the federal government for torts committed by its
28  employees, but federal employees are absolutely immune as individuals from suit for torts. 28

1  U.S.C. § 2679(b)(1); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995). The only
2  proper defendant in an FTCA case is the United States. *Jackson v. Kotter*, 541 F.3d 688, 793 (7th
3  Cir. 2008). Additionally, to state an FTCA claim, plaintiffs must show that the conduct of the
4  government violates some law of the state where the act or omission occurred. *See F.D.I.C.*, 510
5  U.S. at 477-78; *Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir. 1982) (holding any duty that
6  the United States owed plaintiff must be found in California state tort law).

7  Here, even liberally construing the complaint, Plaintiff has failed to allege any FTCA
8  claim. Plaintiff's complaint makes only passing references to the FTCA. (Doc. 10 at 1 [stating he
9  brings "FTCA claims against the United States"] 4 ["No access to … FTCA forms"], 11 ["denied
10 access to … Tort Claim forms"].) And Plaintiff fails to identify what specific tort claims he
11 wishes to assert against the United States. *See Anaya v. United States*, No. 3:25cv959-LL-KSC,
12 2025 WL 2109080, at *3 (S.D. Cal. July 28, 2025) (dismissing complaint because "Anaya fails to
13 clearly identify what specific California tort(s) provide the basis for his claim"); *Gelazela v.
14 United States*, No. 1:22-cv-01539-ADA-EPG, 2023 WL 3570214, at *8 (E.D. Cal. May 18, 2023)
15 (stating "the United States is not liable under the FTCA for constitutional tort claims. Moreover,
16 Plaintiff fails to identify any specific California state tort law that the United States violated in
17 these claims").

18 In the First Screening Order, Plaintiff was granted leave to amend his complaint to assert
19 his FTCA claims against the United States of America. (*See* Doc. 44 at 12-13.) Plaintiff was
20 provided the relevant legal standards given above and was directed to cure the deficiencies
21 relating to the claims: to "plausibly allege all six elements of Section 1346(b)," to demonstrate
22 claims presentation and denial by "the appropriate Federal agency," and to identify what specific
23 tort claims he was asserting. (*Id*.) Subsequently however, Plaintiff has elected to stand on his
24 complaint. As a result, in the absence of amendment curing the identified deficiencies, Plaintiff's
25 complaint fails to state a claim upon which relief can be granted and is subject to dismissal.

26 **C. Summary of Screening and Plaintiff's Response**

27 Following screening, the undersigned found Plaintiff's complaint failed to state a claim
28 upon which relief can be granted against any named Defendant. Plaintiff was granted leave to file

13

1  an amended complaint to cure the deficiencies identified in the screening order. In relevant part,
2  Plaintiff was advised that he must plainly identify the factual allegations asserted as to each
3  named defendant and for each claim asserted against that defendant. (Doc. 44 at 13.) *See Rizzo v.*
4  *Goode*, 423 U.S. 362, 373-75 (1976) (a plaintiff must show a causal connection or link between
5  the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff).
6  Further, Plaintiff was advised to "carefully review the pleading requirements … to ensure, where
7  applicable, any claim asserted against a supervisor is adequately pled" (*see* Doc. 44 at 13
8  [citations omitted]) and advised to "avoid appearing to combine distinct constitutional claims into
9  one claim[11] and to avoid combining constitutional claims with FTCA claims (*id*.). Lastly, Plaintiff
10 was "advised that where the Ninth Circuit has determined a *Bivens* claim is not available in a
11 particular circumstance, amendment of that claim would be improper." (*Id*.)

12       Considering Plaintiff's election to stand on his complaint, by choosing not to cure the
13 deficiencies identified in the First Screening Order by filing a first amended complaint, coupled
14 with his withdrawal of any claim to money damages, this action is subject to dismissal for
15 Plaintiff's failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b); *Iqbal*,
16 556 U.S. at 678; *Solida*, 820 F.3d at 1093-94.

17       For the reasons set forth above and in the Court's screening order, the undersigned
18 recommends granting leave to amend as to two of Plaintiff's claims that could be cured –
19 specifically, Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical
20 needs and Plaintiff's Federal Tort Claims Act claims.  Plaintiff's other claims cannot be cured
21 and, thus, the undersigned recommends declining to grant leave to amend all other claims.
22 *Hartmann*, 707 F.3d at 1130.

23     **III.    CONCLUSION AND RECOMMENDATION**

24       Accordingly, following screening and Plaintiff's subsequent election to stand on his
25 complaint, this Court **HEREBY RECOMMENDS** Plaintiff's complaint (Doc. 10) be dismissed

---

[11] *See, e.g*., Doc. 10 at 4 (asked to "State the constitutional or other federal civil right that was violated" for "Claim I," Plaintiff wrote: "BOP policy – Constitutional violation of 1st Amend – Free Speech, 5th Amend – Due Process, 8th Amend – Cruel and Unusual Punishment").

for a failure to state a claim upon which relief can be granted.

The undersigned **FURTHER RECOMMENDS** that Plaintiff be granted leave to amend only as to his Eighth Amendment claim for deliberate indifference to serious medical needs and any Federal Tort Claims Act claims.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 24, 2025**

UNITED STATES MAGISTRATE JUDGE